**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DR. NOURA SHARABASH, | |
| Plaintiff, | Case No. |
| v. | |
| ADVOCATE HEALTH AND HOSPITALS CORPORATION, | **Trial by jury demanded.** |
| Defendant. | |

## **COMPLAINT**

COMES NOW the Plaintiff, DR. NOURA SHARABASH, by and through her attorneys, Case + Sedey, LLC, and for her Complaint against Defendant, ADVOCATE HEALTH AND HOSPITALS CORPORATION, states as follows:

### **Introduction**

1.      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* (hereinafter "Title VII"), the Illinois Human Rights Act and the Family Medical Leave Act ("FMLA").

### **Jurisdiction & Venue**

2.      Jurisdiction is conferred on this Court by the above-named statutes, as well as by 28 U.S.C. § 1331.  Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) and (c).

### **Factual Allegations**

3.      Plaintiff Dr. Noura Sharabash ("Plaintiff") is a citizen of the United States and a resident of Orland Park, Cook County, Illinois.

4.      Defendant Advocate Health and Hospitals Corporation ("Defendant") is a non-profit health system that is registered and headquartered in Downers Grove, Dupage County, Illinois.

5.      At all relevant times, Defendant was an "employer" as defined by Title VII, the IHRA and the FMLA.

6.      At all relevant times, Plaintiff was an "employee" entitled to the protections of Title VII, the IHRA and the FMLA.

7.      Plaintiff, who is Muslim, began working for Defendant in September 2018 as a gastroenterologist physician.  Plaintiff was the only Muslim working in her practice group.

8.      From the start of Plaintiff's employment, Helen Gant-Farley, Regional Operations Director and Plaintiff's supervisor, was hostile toward her.  Ms. Gant-Farley was not similarly hostile to Plaintiff's non-Muslim counterparts. Despite this, Plaintiff got along well with her fellow physicians and co-workers and did her best to ignore Ms. Gant-Farley's hostility.

9.      In or around the Fall of 2021, Plaintiff told Defendant that she was pregnant.

10.      In October 2021, Plaintiff suffered severely elevated blood pressure which her doctor believed could be caused by preeclampsia.  Per her doctor's instructions, on October 15, 2021, Plaintiff requested FMLA leave to try to get this condition under control.

11.      On November 2, 2021, Plaintiff's doctor released her to return to work with restrictions, one of which was to temporarily see patients only via video visit. Plaintiff submitted her request to Human Resources and to Ms. Gant-Farley.

12.      Despite the reasonableness of this request, Defendant refused to return Plaintiff to work until a month later, on December 3, 2021 and continued to dock her FMLA bank during this delay.  Defendant did not provide any reason for this delay.

13.    Then, on January 3, 2022, Plaintiff tested positive for Covid.

14.    On January 14, 2022, Plaintiff delivered her baby via emergency c-section after suffering a placental abruption which threatened both her baby's life and her own.

15.    Following the delivery of her child, Plaintiff continued to suffer from dangerously elevated blood pressure which her doctor believed was either preeclampsia or possibly chronic hypertension with superimposed pre-eclampsia.   As a result, Plaintiff was readmitted to the hospital.   Plaintiff also suffered from severe fatigue and difficulty breathing (dyspnea). As her struggles continued and after several doctor's visits, Plaintiff's doctor diagnosed her with post-acute Covid-19 syndrome, dyspnea, ongoing hypertension and other conditions stemming from her traumatic and life-threatening delivery.

16.    Plaintiff was initially scheduled to return to work from maternity leave on April 8, 2022.  By February, however, it was clear to Plaintiff and her doctor that Plaintiff would not be well enough to return in April because of her persistent and severe elevated blood pressure and dyspnea.

17.    Plaintiff wished to give Defendant as much notice as possible about her need for extended leave so on February 22, 2022, she requested an extended unpaid leave until August 1, 2022.  Her doctor believed this additional leave was necessary to allow time to recover from post-Acute Covid syndrome and the other conditions with which she was still struggling.

18.    Without engaging in any interactive process or discussion, Ms. Gant-Farley denied Plaintiff's request and insisted she return to work as planned on April 8.

19.    Then, Plaintiff tried to propose a compromise. Even though her doctor recommended full rest, she asked Ms. Gant-Farley if upon her return in April she could at least have a few weeks of taking no call which would give her the best chance to continue recovering

and healing from post-Covid syndrome and other conditions. Ms. Gant-Farley again denied Plaintiff's request with no discussion or interactive process.

20.     Ms. Gant-Farley and Defendant's Human Resources department have provided accommodations to other, non-Muslim, physicians in Plaintiff's group, including by allowing extended leaves of absence or relieving physicians from on-call obligations.  For instance, at least two physicians with high risk conditions were allowed to forego call and certain procedures during Covid.  Other physicians, including Plaintiff, covered for them.  Another physician had a medical condition and asked for and was granted permanent relief from overnight call as an accommodation.  Despite these past practices, Defendant would not do the same for Plaintiff.

21.     Knowing that she would not be physically able to perform her duties by April 8, Plaintiff felt she had no other choice and resigned.

22.     Despite that it knew she was disabled and unable to work, Defendant tried to force Plaintiff to work during her 90-day notice period.

### Exhaustion of Administrative Prerequisites

23.     On October 21, 2022, Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights. A copy of that charge is attached as Exhibit A.

24.     On December 9, 2022, Plaintiff received her Notice of Right to Sue from the IDHR. A copy of that notice is attached here as Exhibit B.

### COUNT I-VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT
### FAILURE TO ACCOMMODATE PREGNANCY CONDITIONS

25.     Plaintiff incorporates paragraphs 1-22 as though set forth herein.

26.     Plaintiff requested accommodations related to her pregnancy conditions when she asked to return to work with the accommodation of temporarily performing only video visits with patients.

27.     Plaintiff's request was reasonable and did not pose an undue burden on Defendant.

28.     Despite the reasonableness of this request, Defendant refused to return Plaintiff to work for one month.

29.     Then, Defendant again refused to accommodate Plaintiff when she requested an extended medical leave and, alternatively, temporary relief from on-call obligations due to her postpartum complications.

30.     Plaintiff's requests were reasonable and would not have posed an undue burden on Defendant.

31.     In refusing to accommodate her post-pregnancy and/or post-Covid conditions, Defendants constructively discharged Plaintiff.

32.     As a result, Plaintiff has suffered lost wages and benefits and emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her all lost wages and benefits stemming from her constructive discharge, compensatory damages in an amount to be determined at trial and attorneys' fees and costs incurred in bringing this action.

**COUNT II-VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT
PREGNANCY DISCRIMINATION**

33.      Plaintiff incorporates paragraphs 1-22 as though set forth herein.

34.     Defendant discriminated against Plaintiff based on her pregnancy when it refused to provide her accommodations it has provided to other non-pregnant employees.

35.     As a result, Plaintiff suffered lost wages and benefits and emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her all lost wages and benefits, compensatory damages and attorneys fees and costs incurred in bringing this action.

## COUNT III-VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## PREGNANCY DISCRIMINATION

36.     Plaintiff incorporates paragraphs 1-22 as though set forth herein.

37.     Defendant discriminated against Plaintiff based on her pregnancy when it refused to provide her accommodations it has provided to other non-pregnant employees.

38.     As a result, Plaintiff suffered lost wages and benefits and emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her all lost wages and benefits, compensatory damages and attorneys fees and costs incurred in bringing this action.

## COUNT IV-RELIGIOUS DISCRIMINATION
## IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

39.     Plaintiff incorporates paragraphs 1-22 as though set forth herein.

40.     Plaintiff was the only Muslim in her office.

41.     Other non-Muslim employees were granted accommodations, including but not limited to relief from on-call responsibilities.

42.     Plaintiff was denied the same accommodations that were granted to others.

43.     As a result of Defendant's disparate refusal to accommodate Plaintiff, Plaintiff was constructively discharged.

44.     As a result, Plaintiff has suffered lost wages and benefits and emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her all lost wages and benefits stemming from her constructive discharge, compensatory damages in an amount to be determined at trial and attorneys fees and costs incurred in bringing this Action.

## COUNT V-RELIGIOUS DISCRIMINATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

45.    Plaintiff incorporates paragraphs 1-22 as though set forth herein.

46.    Plaintiff was the only Muslim in her office.

47.    Other non-Muslim employees were granted accommodations, including but not limited to relief from on-call responsibilities.

48.    Plaintiff was denied the same accommodations that were granted to others.

49.    As a result of Defendant's disparate refusal to accommodate Plaintiff, Plaintiff was constructively discharged.

50.    As a result, Plaintiff has suffered lost wages and benefits and emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her all lost wages and benefits stemming from her constructive discharge, compensatory damages in an amount to be determined at trial and attorneys fees and costs incurred in bringing this Action.

## COUNT VI-RETALIATION IN VIOLATION OF THE FMLA

51.    Plaintiff incorporates paragraphs 1-22 as though set forth herein.

52.    Plaintiff applied for and was granted FMLA leave.

53.    Following her return from FMLA leave, Defendant discriminated against Plaintiff by refusing to provide her reasonable accommodations it had provided to others and by forcing her constructive discharge.

54.     As a result, Plaintiff has suffered lost wages and benefits and emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits, liquidated damages and attorneys' fees and costs incurred in pursuing this matter.

### **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues herein.

Respectfully Submitted,

DR. NOURA SHARABASH


By:     /s/   *Kristin M. Case*
One of her Attorneys

Kate Sedey
Kristin M. Case
Case + Sedey, LLC
250 South Wacker Dr., Ste. 230
Chicago, Illinois 60606
Tel. (312) 920-0400
Fax (312) 920-0800
kcase@caseandsedey.com